UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Criminal Action No. 07-0065 (GK) |
| CHRISTIAN FERNANDO BORDA, : | |
| et al., : | |
| Defendants. : | |
| : | |

## MEMORANDUM OPINION

On December 9, 2010, Defendants Christian Fernando Borda and Alvaro Alvaran-Velez were convicted of conspiracy to distribute five kilograms or more of cocaine with the intent or knowledge that the cocaine would be unlawfully imported into the United States. See Verdict Form as to Christian Fernando Borda [Dkt. No. 207]; Verdict Form as to Alvaro Alvaran-Velez [Dkt. No. 209]; 21 U.S.C. §§ 959, 963. Defendants first moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case on December 1, 2010. The Court reserved decision on Defendant's motion pursuant to Rule 29(b), which states that "[t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." Fed.R.Crim.P. 29(b).

On December 22, 2010, after the Jury's verdict of guilty, Defendants renewed their Motion for Judgment of Acquittal [Dkt. No. 217]. Upon consideration of the Motion, the Opposition, the Reply, the Government's Response to Defendants' Reply, and Defendants' Surreply, as well as the applicable caselaw, Defendants' Joint Renewed Motion for Judgment of Acquittal is **denied**.

## I. Background

Defendants were each convicted of conspiring, beginning in January 2005 and continuing at least to October 2005, to distribute five or more kilograms of cocaine with the intent or knowledge that the cocaine would be unlawfully imported into the United States. See 21 U.S.C. §§ 959, 963. At trial, Defendants did not dispute that they had distributed cocaine during that period, but argued that they neither knew nor intended that the cocaine would be unlawfully imported into the United States.

The Government offered evidence of three separate drug deals in 2005. The first deal, "Palm Oil One," took place between January and May 2005. In Palm Oil One, Defendants Borda and Alvaran arranged to ship 1,553 kilograms of cocaine concealed in drums of palm oil from Cartagena, Colombia to Puerto Progreso, Mexico. Upon the shipment's arrival in Puerto Progreso, an associate named Raul Valladeres, or "Junior," contacted Defendants to say that he could transport the cocaine to Monterrey, Mexico and would pay Borda $9,100 per kilogram within ten days after receipt of the drugs. Tr.

-2-

at 18:24-20:18, 25:10-28:15 A.M. Session, Nov. 4, 2010. Defendants agreed to Junior's proposal, and Junior transported the cocaine north to Monterrey. Id.; Gov't Ex. 40b at 3-4.

The Government introduced evidence that Monterrey is located less than two hours away from the United States border. The Government's evidence also showed that Monterrey is an inland city in Mexico with insufficient demand for a load of cocaine as large as the Palm Oil One load. See Gov't Ex. 40b at 6 (Defendant Alvaran stated that Monterrey is "not a market for personal use").

In addition, the Government introduced evidence that Defendants were aware that Junior was trying to sell the cocaine across the Mexico-United States border.

First, on June 15, 2005, Defendant Alvaran met with the Government's confidential informant, Camilo Suarez, after Junior had failed to pay Defendants for Palm Oil One within ten days of receiving the drugs. Suarez testified at trial that, in the course of that meeting, Alvaran expressed his understanding that the cocaine had been moved north of Mexico City to Monterrey. Tr. at 22:2-9 P.M. Session, Nov. 15, 2010; Gov't Ex. 34b.

Second, on July 20, 2005, Borda met with Alvaran and Suarez to discuss Junior's progress in making payments for Palm Oil One. Suarez defended Junior's delay to Borda by explaining that the "market went bad because the border got, [] harder for him." Gov't. Ex. 40b at 3-7. Defendants then discussed the conditions at the

border in further detail. Id. At one point, Borda noted that he understood Junior's difficulties because he had once been a drug dealer in the United States. Id. at 10. Borda also went on to explain that his source for cocaine in Colombia had told him how such transactions usually proceed:

> [Mexicans] get the merchandise, they say they'll take it, they pay us nine thousand in Monterrey and they go and sell it on the other side[1] for, for fourteen thousand or fifteen thousand pesos, and we're the ones that are losing because we lose time, money and everything else.

Id. at 22-23.

Third, Suarez testified at trial that "[a]ll 1,553 [kilograms] went to the United States." Tr. at 44:5-9 A.M. Session, Nov. 18, 2010. Suarez also testified that he did not recall any discussion of Borda's share of the Palm Oil One cocaine, which totaled 724 kilograms, going to Europe. Tr. at 46:13-17 P.M. Session, Nov. 18, 2010.[2] Finally, both Suarez and Borda's secretary in Mexico City, Juan Montoya, testified at trial that payment was received from

---

[1] "On the other side" refers to the United States.

[2] Defendants argue that this testimony is contradicted by Suarez's subsequent testimony on November 22, 2010 that he did not know what Junior had done with the cocaine. However, this argument takes Suarez's testimony out of context. On November 22, 2010, Suarez testified that he lacked any knowledge on November 22, 2005--the date of the recording about which he was being questioned--as to what Junior had done with the drugs. Tr. at 31:5-34:15 A.M. Session Nov. 22, 2010. There is no contradiction between this statement and his testimony at trial regarding his current knowledge about the final destination of the cocaine.

Junior for Palm Oil One in United States currency. Tr. at 45:17-24 A.M. Session, Nov. 17, 2010; Tr. at 71:9-18 A.M. Session, Nov. 24, 2010.

In the second deal, "Palm Oil Two," Defendants discussed shipping additional cocaine from Colombia to Mexico, but ultimately never did so because of their difficulties in receiving payment for Palm Oil One. Finally, the third deal, named the "Chino Load," occurred in September 2005. In this third deal, Borda, Alvaran, and an associate named "El Chino" agreed to transport a second load of 3,000 kilograms of cocaine from Colombia to Mexico City, Mexico in two "go-fast boats," one of which was a Venezuelan-registered fishing vessel. However, the crew of that fishing vessel, which was carrying half of the Chino Load, threw the cocaine into the Caribbean Sea shortly before being intercepted by the United States Coast Guard. Tr. at 41:24-42:17 A.M. Session, Nov. 16, 2010. Consequently, the United States Coast Guard found no cocaine on the ship.

On the basis of this evidence, the Jury returned a verdict of guilty against Defendant Borda and Defendant Alvaran, concluding that each conspired to distribute more than five kilograms with the knowledge or intent that the cocaine would be unlawfully imported into the United States.

## II. Standard of Review

Defendants raising a Rule 29 motion must meet a demanding standard in order to obtain a judgment of acquittal. A conviction in a criminal trial must be upheld if "'<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>United States v. Wahl</u>, 290 F.3d 370, 375 (D.C. Cir. 2002) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). "'In making that determination, the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" <u>United States v. Battle</u>, 613 F.3d 258, 264 (D.C. Cir. 2010) (quoting <u>United States v. Andrews</u>, 532 F.3d 900, 903 n. 1 (D.C. Cir. 2008)).

## III. Analysis

Defendants argue that the Government's evidence fails to prove beyond a reasonable doubt that they knew or intended that the cocaine was destined for the United States. A conviction under 21 U.S.C. § 960 must rest on proof of the defendant's actual knowledge; it is not enough to show that a defendant <u>should have known</u> that the illegal substance would be unlawfully imported into the United States. <u>United States v. Chan Chun-Yin</u>, 958 F.2d 440, 443 (D.C. Cir. 1992). However, "proof [of a defendant's actual

knowledge] may take the form of circumstantial as well as direct evidence." Id.

In the course of arguing their Motion, Defendants urge this Court to interpret the Government's evidence, or in some cases the Government's lack of evidence, as giving rise to certain inferences favorable to acquittal. See Defs.' Mot. at 3-14. It should be emphasized at the outset that this Court's task in reviewing a Rule 29 motion is not to weigh the evidence and reach its own conclusions. Instead, its task is to determine whether, viewing the evidence in the light most favorable to the prosecution and according the verdict the benefit of all legitimate inferences, a reasonable trier of fact could have found the essential elements beyond a reasonable doubt. Battle, 613 F.3d at 264.

As discussed above, the Government's evidence showed that Junior informed Defendants of his intention to bring the Palm Oil One cocaine shipment, including Borda's share, north from Puerto Progreso to Monterrey, Mexico shortly after it was delivered from Colombia. The evidence also showed that Monterrey, which has no market for personal consumption of cocaine, is less than two hours from the United States border. In addition, the evidence showed that Borda received payment from Junior in United States currency. Finally, Junior's delay in paying Borda and Alvaran for the Palm Oil One cocaine led to a series of discussions in which Junior's difficulties in moving the cocaine across the border were made

clear to Defendants. Indeed, according to Government Exhibit 40b, Borda said he understood Junior's problems because he had once been a drug dealer in the United States. Based on all this evidence, the Court concludes that there is a sufficient basis for a jury to conclude beyond a reasonable doubt that Defendants knew or intended that the Palm Oil One cocaine was being unlawfully imported for sale in the United States.

In addition, the Chino Load was transported on a fishing vessel which could have made the trip across the Atlantic Ocean from Colombia to Europe. Instead, the vessel navigated westward--in the direction of Mexico--into an area of the Caribbean which was patrolled by the United States Coast Guard. The Jury could have reasonably inferred from this evidence that Borda and Alvaran intended the cocaine in the Chino Load to travel the same route as the cocaine in Palm Oil One: through Mexico to the United States.

In response, Defendants point to evidence which they argue proves their lack of knowledge or intent. First, Defendants rely heavily on the fact that Junior paid Borda and Alvaran $9,100 per kilogram of cocaine, which is the price for delivery in Mexico, and not the much higher price for delivery in the United States. Defs.' Mot. at 12. Similarly, Junior charged Defendant Borda an 18% transportation fee, which is common for transportation of cocaine within Mexico, instead of the much higher transportation fee typically charged for delivery into the United States. Id. Finally,

Suarez twice offered to transport cocaine for Borda into the United States, and Borda refused, saying he did not want that responsibility. Tr. at 29:12-16 A.M. Session, Nov. 22, 2010.

While this evidence could reasonably support Defendants' claim of innocence, that certainly does not mean that no reasonable juror could view it differently and find beyond a reasonable doubt that Borda and Alvaran knew or intended that the cocaine they shipped from Colombia into Mexico would enter the United States illegally. A reasonable jury could have inferred from this evidence that Defendants did not want to be personally responsible for transporting the cocaine into the United States, but nevertheless concluded on the basis of other information that Defendants knew that the cocaine would eventually reach that market through Junior.

Defendants also point to evidence showing that Borda had the capability to send large amounts of drugs to Europe. See Defs.' Surreply at 5-7. Again, evidence that Borda was capable of sending drugs to Europe does not compel the conclusion that no reasonable jury could find beyond a reasonable doubt that Defendants knew or intended that the Palm Oil One and/or Chino Load cocaine were to be unlawfully imported into the United States.

Defendants keep misstating what the statute requires. They say repeatedly that there was no evidence that they knew that the cocaine was imported into the United States. Defs.' Mot. at 7. Rather, the statute requires that Defendants have the knowledge or

intent that the drugs "<u>will be</u> unlawfully imported into the United States." 21 U.S.C. § 959 (emphasis added). The difference is between proving that past importation occurred, as opposed to proving knowledge or intent of future importation into the United States.

For these reasons, the Court concludes that a reasonable jury could have found beyond a reasonable doubt that Defendants Borda and Alvaran knew or intended that the cocaine in Palm Oil One and the Chino Load was to be unlawfully imported into the United States. Therefore, Defendants' Motion for Judgment of Acquittal is **denied**.

In addition to challenging the sufficiency of the evidence, Defendants also argue that the Jury was not properly instructed as to certain evidence that was struck from the record. Specifically, Defendants argue that the Court failed to instruct the Jury to strike the testimony related to Government Exhibit 77b, which included several clips from an intercepted conversation between Defendant Borda and others on August 22, 2006. Instead, Defendants argue, the Court merely instructed the Jury to strike the Exhibit itself and the transcripts and translations provided to the jury. As the record demonstrates, however, the Court did in fact instruct the jury, immediately after striking the Exhibit, to disregard any testimony relating to Government Exhibit 77b, which it had already struck. See Tr. at 7:10-13 P.M. Session, Dec. 6, 2010 ("Ladies and

Gentlemen, I'm sure you all understand. The testimony, the actual testimony in court regarding those particular exhibits and clips, that testimony is struck from the record as well.").

Finally, Defendants argue that the Government improperly invited the Jury to speculate about Defendants' knowledge or intent in its closing argument. Specifically, Defendants claim the Government misrepresented testimony concerning the calculation of transportation fees for cocaine, see Defs.' Mot. at 17, and made an improper argument when it suggested that a box of bees left at the border, like the cocaine involved in this case, would find its way into the United States.

Rule 29 affords Defendants an opportunity to move for acquittal on the basis that the evidence is insufficient to sustain their convictions. See Fed. R. Crim. P. 29. Defendants' arguments do not alter this Court's conclusions regarding the sufficiency of the evidence introduced by the Government in its case in chief. Consequently, they are not properly raised under this Rule 29 Motion for Judgment of Acquittal.

In any event, because this Court reserved judgment on Defendants' initial Rule 29 motion, it must decide the motion on the basis of the evidence presented at the time the ruling was reserved, which of course does not include closing arguments at the conclusion of all the evidence. See Fed. R. Crim. P. 29(b) ("If the court reserves decision [on a motion for judgment of acquittal], it

must decide the motion on the basis of the evidence at the time the ruling was reserved.").[3]

IV. Conclusion

For the reasons set forth above, Defendants' Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29 is **denied**. An Order will accompany this Memorandum Opinion.

March 9, 2011

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

Copies to: Attorneys of Record via ECF

---

[3] It must be acknowledged that the Government's argument about "the bees" was hard to comprehend, but neither prejudicial nor improper.