UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, :
:
v. : Criminal Case No. 07-65 (GK)
:
CHRISTIAN BORDA, *et al.*, :
:
Defendants. :

## MEMORANDUM OPINION

On December 9, 2010, the Defendants were convicted in a jury trial of one count of conspiracy to distribute five or more kilograms of cocaine knowing and intending that it would be imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963. The Government alleged that Defendants were part of a conspiracy to send large amounts of cocaine from Colombia to Mexico, knowing and intending that the cocaine would ultimately reach the United States.

On May 26, 2011, Defendants filed a Motion to Dismiss the Case Based on a Brady Violation, or in the Alternative, for Disclosure of Brady Evidence to Continue Sentencing [Dkt. No. 252]. Based on the allegations contained in that Motion, and the fact that the sentencing date was set for June 6, 2011, the Court continued the sentencing during what turned out to be extensive briefing by the Parties. The final brief was submitted by the Government on August 8, 2011.

In their Motion, Defendants reported that during preparations for sentencing, one of their lawyers met with an individual who informed counsel that he had information favorable to the Defendants, which the Government never disclosed. The gist of that information was that two individuals who actually participated in or who had direct knowledge of the activities surrounding

the "Palm Oil deal,"[1] informed the DEA that any Palm Oil cocaine which may have been imported into the United States was done so without the knowledge, consent, or authorization of Defendants. Defendants submitted a sealed, ex parte affidavit by counsel which recounted the details of that conversation.

On the assumption that the facts told to counsel were true, Defendants requested that the Court either dismiss this case or, in the alternative, order all Government prosecutors responsible for the case to "affirm or deny" whether they possessed any information that showed Palm Oil cocaine may have been imported into the United States, and that it was done so without the knowledge, consent, or authorization of Defendants. In addition, Defendants requested that the Government disclose additional detailed information about individuals who imported any of the Palm Oil cocaine into the United States, and that it produce to the Defendants, "or alternatively, for *in camera* review all material pertaining to Camilo Suarez, Raul Valladares, Hugo Barrera, Jose Reyes, Arnulfo Reyes, and any other individual with knowledge of activities pertaining to Defendants' illegal conduct charged in this case, including but not limited to recordings, law enforcement reports, and agent notes." Defs.' Mot. at 9.

The Government vigorously opposes all that the Defendants ask for, claiming that the information provided by the Defendants does not meet the legal standard set forth in United States v. Pettiford, 627 F.3d 1223 (D.C. Cir. 2010), for setting aside a conviction based on failure to comply with Brady obligations, Brady v. Maryland, 373 U.S. 83 (1963), or for ordering the

---

[1] The "Palm Oil deal" refers to the Government's charge that Defendants participated in a conspiracy to send cocaine, hidden in a containerized shipment of drums of palm oil, from Colombia to Mexico and finally to the United States.

Government to disclose the wide range of materials asked for by Defendants. See generally Gov't's 2d Response to Defs.' Mot. to Dismiss and for Disclosure of Alleged Brady Material [Dkt. No. 260].

In Pettiford, our Court of Appeals held that the Government has violated its Brady obligations if the evidence in issue is favorable to the accused, was suppressed, whether willfully or inadvertently by the Government, and prejudice ensued meaning that the withheld evidence was material. Pettiford, 627 F.3d at 1227. The Court also noted that the remedy for a Brady violation is a retrial, not dismissal as requested by Defendants. Id. at 1228.

In addition, the Court of Appeals has warned against accepting any Brady allegations based on "utter speculation." United States v. Brooks, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992). Defendants carry the "burden of showing a Brady violation" and must raise at least a colorable claim. United States v. Andrews, 532 F.3d 900, 907 n. 3 (D.C. Cir. 2008). Defendants have simply failed to meet this burden.

Defendants' Motion papers, including the sealed affidavit, which was filed ex parte, do not establish a colorable claim of a Brady violation. Although it has at times been necessary to order the Government to provide certain Brady material, the Government has also provided very substantial amounts of discovery, without Court intervention -- as is its obligation. The Government has repeatedly denied that there is any outstanding Brady material at this time. What is even more significant is the Government's Sealed Supplemental Response to Defendants' Motion to Dismiss, containing two affidavits from two DEA Special Agents, which directly address, and deny, the facts alleged by Defendants in their Motion.

As already noted, Defendants submitted information in their Motion that an incarcerated individual told Defendant Borda's counsel that he had been told by two other incarcerated

individuals that neither Defendant had ever known or intended that the Palm Oil shipment be delivered to the United States. In the Government's Supplemental Response, two DEA Agents gave sworn statements that they interviewed the two individuals who are alleged to have given the unidentified informant the information relied upon by Defendants in their Motion, that those two individuals were interviewed by them, and that neither one told the Government Agents that the Defendants had not authorized or otherwise known about importation of the Palm Oil cocaine into the United States.[2]

Finally, in addition to the affidavits submitted by the Government, which directly counter the Defendants' allegations of a <u>Brady</u> violation, the Defendants' submission, in and of itself, failed to raise a colorable claim. Defendants' counsel's statement, which was not made under oath, contains an unsworn, hearsay statement from the individual making the allegations upon which Defendants

---

[2] DEA Special Agent Michael Chase interviewed Hugo Barrera, in the presence of the two Government attorneys who prosecuted this case, and stated that although Mr. Barrera discussed his participation in the conspiracy to transport the Palm Oil cocaine from Mexico to the United States, he never stated that Defendant Borda intended that the Palm Oil cocaine go to the United States. Mr. Barrera did not state that Defendant Borda did not know that the Palm Oil load went to the United States. In addition, Mr. Barrera did not make these same statements as to Defendant Alvaran.

DEA Special Agent Doug Waters also interviewed Hugo Barrera, in the presence of the two Government attorneys who prosecuted this case, and stated that Mr. Barrera discussed his part in the conspiracy to transport the Palm Oil cocaine from Mexico to the United States, but did not state that Defendant Borda intended that the Palm Oil load not be imported into the United States and did not state that Defendant Borda did not know that the Palm Oil load had gone to the United States. Agent Waters did not recall Mr. Barrera talking at all about Defendant Alvaran, and did not comment on Defendant Alvaran's knowledge or intent.

Special Agent Waters also interviewed Arnulfo Reyes, in the presence of one of the Government attorneys assigned to this case and a Spanish interpreter. Mr. Reyes indicated that he had not participated in the Palm Oil load and had never met Defendant Borda. At that point, the interview was terminated.

rely. That individual making those unsworn, hearsay statements is never identified.³ In sum, all that the Defendants have presented is an unsworn statement from an unidentified individual who has never been cross-examined and who clearly had to have been involved himself or had to have known about the Palm Oil conspiracy. In response, we have two sworn statements from DEA Agents who interviewed the two people referred to by the unidentified individual and those statements directly refute what the unidentified individual is alleged to have told Defendants' counsel. Defendants have submitted no response to the Government's Sealed Supplemental Response to the Motion to Dismiss, which was filed on August 8, 2011.

Defendants also ask that the Court conduct an in camera review of all material pertaining to Suarez, Valladares, Barrera, Jose Reyes, Arnulfo Reyes, and any other individual with knowledge of activities pertaining to the conduct with which the Defendants have been charged in this case. In Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987), the Supreme Court held that "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files." In Brooks, 966 F.2d at 1505, our Court of Appeals noted that in camera review of alleged Brady material by the District Court is unnecessary unless the defendant identifies specific "exculpatory evidence [that the prosecution] withheld." See also United States v. Carson, No. 03-3015, 2002 WL 3124690 (D.C. Cir. Oct. 2, 2002) (unpublished). In this case, while the Defendants have named specific material they want presented for in camera review, that material identified covers a great deal of ground. Moreover, they cannot say, and have not said, that they are identifying specific "exculpatory evidence [that the prosecution] withheld." See Brooks, 966 F.2d

---

³ Defendants strongly suggest that if his identity is made known, the Government would seek "retribution" against the witness. Once again, there is nothing offered to support this vague, but attention-getting allegation.

at 1505; Ritchie, 480 U.S. at 59. Given these guidelines from the Supreme Court and the Court of Appeals for this Circuit, the Court concludes that there is no justification for ordering the Government to amass what may be a very substantial amount of material, and for then conducting its own in camera review of that material.

For all these reasons, the Court concludes that the Defendants' Motion must be **denied** and a sentencing date will be set.

Aug. 22, 2011

/s/ Gladys Kessler
Gladys Kessler
United States District Judge