## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No. CR-07-065 (GK)** |
| **ALVARO ALVARAN-VELEZ,** | * | |
| **Defendants.** | * | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S REPLY

**A.      Waiver**

The Government does not address its failure to object to the resentencing of Mr. Alvaran as a matter of law as soon as this Court scheduled notified counsel that it was setting the matter in for a resentencing hearing.  Instead, the Government sought a writ to bring Mr.Alvaran to this district from his place of incarceration in Jessup, Georgia at great inconvenience to him.  In transporting him to this district, the Bureau of Prisons first transported Mr. Alvaran to FTC Oklahoma City, a central facility where prisoners are routed on the way to other locations.  Thereafter, he has been held in Northern Neck, Virginia, a state facility used by the United States Marshalls to house pretrial detainees and others awaiting hearings before this Court.  Medical attention at that facility is limted.

At this point in the proceedings, this Court should deem that the Government has waived the arguments.

**B.      Ex Post Facto Clause**

The Government claims that the Ex Post Facto Clause does not apply to a re-sentencing based on a retroactive amendment.  In support, it cites *United States v Dillon,* 560 U.S. 817 (2010) and *United States v Peugh,* 133 S.Ct. 2072 (2013).  Neither case is apposite.  The Supreme Court in *Peugh* found that the application of a post-offense guideline amendment which resulted in a more

severe advisory range violated the *ex post facto* clause even where the Sentencing Guidelines are not mandatory.   In *Dillon,* the Supreme Court did not address or mention the ex post facto clause.   Thus neither case supports the Government's argument.

In the context of a resentencing based on a retroactive guideline amendment, the Second Circuit has explained that the

> relevant inquiry for *ex post facto* analysis is not whether a particular amendment to the Sentencing Guidelines is detrimental to a defendant, but whether application of the later version of the Sentencing Guidelines, considered as a whole, results in a more onerous penalty. *United States v. Keller,* 58 F.3d 884, 890-93 (2d Cir.1995) (noting that "had the changes detrimental to the defendants not more than offset the changes favorable to them, the later version of the guidelines would have been applicable, notwithstanding that one component of the later version would have been less favorable to defendants").

*Berrios v. United States*, 126 F.3d 430, 433 (2d Cir. 1997).

*Berrios* involved an issue similar to the one presented by Mr. Alvaran – whether an amendment to § 1B1.10(b) adopted after the defendant had committed the offense violated the Ex Post Facto Clause.   In *Berrios*, the district court had reduced the defendant's original 210-month sentence to 168 months based on a retroactive amendment listed in § 1B1.10 but limited the extent of the reduction based on the post-offense amendment to § 1B1.10(b).   The Second Circuit found no violation of the Ex Post Facto Clause because the defendant had not been "disadvantaged" as he had received a "net benefit" – namely a 42-month sentence reduction.  *Id*.

In *United States v. Coates*, 295 F. Supp. 2d 11, 16 (D. D.C. 2003), Judge Friedman applied a similar standard in a sentencing context.   In that case, Judge Friedman held that the Ex Post Facto Clause prohibited application of the Protect Act, which would have prevented consideration of

a departure argument and thus "would significantly disadvantage the defendant."   In

analyzing the effect of the post-offense change in the law, Judge Friedman focused on  the

overall effect of the change in the law, explained that the ex post facto clause is not implicated

"so long as the overall sentence is lower."

   Lastly, as the D.C. Circuit has explained the existence of discretion in applying the

sentencing guidelines does not foreclose an ex post facto claim." *United States v. Turner*, 548 F.3d

1094 (D.C. Cir. 2008).

> The controlling inquiry . . . is how the parole authority "exercises
> discretion in practice" and whether "exercise[s] of discretion ...
> actually 'create [ ] a significant risk of prolonging [an inmate's]
> incarceration' "  The proper approach is therefore to conduct an "as
> applied" constitutional analysis,  *see Miller v.  Florida,* 482 U.S. 423,
> 435 (1987),  not the sort of facial analysis conducted in *United States
> v. Demaree*, 459 F.3d 791 (7th Cir. 2006).  When the district court
> sentenced Turner to 33 months' imprisonment, it did not pull the
> number out of thin air. Turner's sentencing range under the
> Guidelines then in effect was 33-41 months, *see* U.S. Sentencing
> Guidelines Manual, Sentencing Table, or so the court thought. It is
> obvious that the court decided to sentence Turner at the low end of
> the 2006 Guideline sentencing range.  Had the court used the 2000
> Guidelines, Turner's sentencing range would have been 21-27
> months, and it is likely that Turner's sentence would have been less
> than 33 months. Turner did not have to show definitively that he
> would have received a lesser sentence had the district court used the
> 2000 Guidelines.  It is enough that using the 2006 Guidelines created
> a substantial risk that Turner's sentence was more severe, thus
> resulting in a violation of the Ex Post Facto Clause.

*United States v. Turner*, 548 F.3d 1094, 1100 (D.  C.  Cir. 2008) (internal citations omitted).

   Application of the current version of U.S.S.G. § 1B1.10(b)(2)(A) to Mr.  Alvaran violates

the ex post facto clause because it prohibits a reduction below the amended guideline range.  That

change definitely disadvantages Mr.  Alvaran as it prohibits any sentence reduction from the original

sentence despite the 2-level reduction to the drug guidelines now in effect.  It also does not result in a net advantage.

Whereas the version of § 1B1.10(b) in effect in 2006 imposed no such limitation on the sentence reduction.  Indeed, the commentary to § 1B1.10(b) explicitly addresses the situation in Mr. Alvaran's case, where this Court originially reduced his sentence below the advisory guideline range. The commentary explicitly notes the appropriateness of granting a comparable reduction when the original sentence had been the result of a downward departure:

> When the original sentence represented a downward departure, *a comparable reduction below the amended guideline range may be appropriate*; however, in no case shall the term of imprisonment be reduced below time served. Subject to these limitations, the sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section.

U.S.S.G. § 1B1.10 (comment. n. 3) (2006) (emphasis added).

## C.    Discretion

This Court at the original sentencing rejected the arguments that the Government again makes in opposing the mitigating factors that Mr.  Alvaran presents – his age, medical condition, imprisonment far from home, that he is not likely to recidivate, that he did not have an opportunity to plead guilty except with cooperation, that similarly situated defendants were sentenced less severely, and his post-offense rehabilitation, among others.  In accordance with the commentary to the 2006 policy statement, this Court should grant a "comparable reduction below the amended guideline range" in view of the reduced offense level.  A comparable reduction would yield a sentence of 145 months, or less.

**CONCLUSION**

Mr. Alvaran respectfully requests that this Court exercise its discretion to reduce his sentence. Such a sentence is reasonable, is a just sentence, and is "sufficient, but not greater than necessary" as required by 18 U.S.C. § 3553(a). Mr. Alvaran is contrite for his past conduct. He is advanced in age, not physically well and is heartbroken at having recently lost his brother without having the opportunity to see him. He wants to spend his last years with his daughter and remaining siblings. He respectfully asks this Honorable Court to grant him mercy. He pledges to this Court that he will never again violate the laws of the United States or of any other state.

Respectfully submitted,

/s/

**Carmen D. Hernandez**
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)
chernan7@aol.com

**CERTIFICATE OF SERVICE**

This is to certify that on this 9th day of August, 2017, a copy of this pleading was delivered to all parties through ECF.

/s/

**Carmen D. Hernandez**